**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Sharon Wallace, | No. CV-23-00917-PHX-SRB |
| Plaintiff, | **ORDER** |
| v. | |
| Kroger Company, et al., | |
| Defendants. | |

Before the Court is Defendant Smith's Food & Drug Centers, Inc., d/b/a Fry's Food Stores of Arizona, Inc.'s ("Fry's") Motion for Sanctions ("Motion") against Plaintiff Sharon Wallace. (Doc. 72, ("Mot.").)

**I.    BACKGROUND**

**A.    Factual Background**

This case arises out of an employment dispute between Wallace and her former employer, Fry's. (*See* Doc. 1, Compl.) Wallace was hired by Fry's in 1993 as a cashier. (*Id.* ¶ 14; Doc. 20, Answer ¶ 14.) In 1998, Wallace sustained a workplace injury, which she claims caused a permanent disability in her right arm. (Compl. ¶ 16; Answer ¶ 16; *see* Compl. ¶¶ 3, 19–20.) In brief, her Complaint alleges that she suffered an additional workplace injury on January 15, 2020, which exacerbated her disability. (Compl. ¶¶ 29, 118.) She was later terminated on July 7, 2020. (*Id.* ¶ 106.) According to Wallace, Fry's did not reasonably accommodate her injury in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (Compl. ¶¶ 107–122.)

In its Motion, Fry's alleges—among other discovery misconduct—that Wallace spoliated electronically stored information ("ESI") and failed to produce relevant evidence. (*See generally* Mot.) The Motion concerns four discrete categories of ESI: (1) audio recordings; (2) emails; (3) social media content; and (4) text messages. (*Id.* at 6–11.) The Court details the relevant allegations for each category of ESI in turn.

### 1.    Audio Recordings

On December 15, 2023, Fry's served Wallace with Requests for Production of Documents ("RFPs"), including a request to produce "any written or recorded statements and/or recorded conversations . . . from any individual concerning this Lawsuit." (Doc. 72-1, Ex. A, Def.'s First Reqs. for Produc. ("First RFPs") at 6.) Wallace responded on January 30, 2024, explaining that she had recorded two pertinent conversations near the time of her alleged injury. (*See* Doc. 72-1, Ex. R, Pl.'s Resps. to RFPs ("Resps. to First RFPs") at 141–42.) According to Wallace, the first recording was of a conversation on January 30, 2020, during which a representative from Fry's workers' compensation claims management provider stated that Wallace's "request for medical treatment was denied based on Fry's video footage." (*Id.*; *see* Compl. ¶ 39.) The second recording was of a February 3, 2020 discussion between Wallace and two Fry's employees "about light duty work."[1] (Resps. to First RFPs at 141.) Wallace provided her "transcription" of both recordings in her responses to the RFPs and stated that she was "attempting to locate and produce the recorded conversation[s]" and would provide them "if and when" they were available. (*Id.* at 141–42.) On March 7, 2024, Wallace supplemented her discovery responses and stated that she "made surreptitious notes" of both conversations but removed references to the existence of recordings. (Doc. 72-1, Ex. C, Pl's Second Suppl. Resps. to First RFPs ("Suppl. Resps. to First RFPs") at 23–24.)

On October 10, 2024, after several attempts to cure her alleged discovery deficiencies, Wallace produced a July 17, 2020 email in which she references recording a conversation regarding her workers' compensation claim with the Industrial Commission

---

[1] Wallace alleges that after her initial workplace injury in 1998, her doctor recommended that she be restricted to "light duty work . . . with no bagging." (Compl. ¶ 21.)

of Arizona ("ICA"). (*See* Doc. 72-1, Ex. S at 149; Mot. at 10.) The parties met and conferred the following week, during which Wallace's representative Lisa Bliss[2] allegedly indicated that the recordings "ha[d] been deleted." (Mot. at 5; *see* Doc. 72-1, Ex. K at 96.) The same day, Wallace agreed to produce her devices for a forensic examination with Peak Forensics. (Doc. 72-1, Ex. K at 96.) On October 30, 2024, Wallace's former counsel Phil Flemming stated in an email that Wallace had "recall[ed] recording conversations" with representatives from the ICA and that these recordings "were deleted when she withdrew from the ICA proceeding." (Doc. 72-1, Ex. T at 152.)

On November 5, 2024, according to her former counsel, Wallace "accidentally dropped" her tablet in water, rendering it inoperable. (Doc. 72-1, Ex. L at 104.) She had not backed-up the data on the device. (*Id.* at 105.) On November 18, 2024, Wallace produced her computer, iPhone, tablet, and flip phone for forensic examination. (*See* Mot. at 5; Doc. 94-1 at 33–34.) The examination revealed two recordings that were uploaded to Dropbox around the time Wallace was pursuing her workers' compensation claim. The first recording, titled "4-15 PH. Works Comp.m4a," appeared in an April 15, 2020 email from Dropbox. (Doc. 72-1, Ex. U at 154.) The second recording, titled "Civil Complaint June 5, 2020.m4a," appeared in a June 5, 2020 email from Dropbox.[3] (*Id.* at 155.) Both recordings had since been deleted. (*See id.* at 156.) The examination also uncovered e-mails that Wallace sent to herself on June 20, 2022, suggesting the existence of three additional recordings. (*See* Doc. 72-1. Ex. V at 158–60.) The recordings—titled "Apr 7 22' no pay unemployment Danielle adjuc.m4a," "Attry Terence cushing.m4a," and "Aug 19 unmployment pd.m4a"—appear to have been stored on Wallace's non-functioning tablet and are no longer accessible.[4] (*See* Mot. at 11.)

---

[2] Bliss has not filed an appearance with the Court in this case. According to Fry's, she is a colleague of Wallace's former counsel and "work[ed] with Plaintiff regarding discovery." (Mot. at 5.)

[3] Wallace alleges that she filed an Employment Charge of Discrimination against Fry's with the Arizona Attorney General's Office and the Equal Employment Opportunity Commission on June 8, 2020. (Compl. ¶ 11.)

[4] The recordings were made with an Android application called "Easy Voice Recorder" that purportedly would not have been available on Wallace's iPhone or flip phone. (*See* Doc. 72-1. Ex. V at 158–60.) According to Fry's, "Attry Terence cushing.m4a" refers to an attorney who represented Wallace in her workers' compensation claim. (*See id.* at 159;

### 2.    Emails

Fry's requested that Wallace produce any emails related to her lawsuit and identify any email accounts she maintained or used after January 1, 2019. (First RFPs at 6; Doc. 72-1, Ex. D, Pl.'s Suppl. Answers to Def.'s First Set of Interrogs. ("Answers to Interrogs.") at 35–36.) Wallace objected to the RFP and did not disclose any email accounts in her interrogatory response. (Resps. to First RFPs at 142–43; Answers to Interrogs. at 35–36.) She later produced a document that appeared to contain copy-and-pasted emails. (*See* Doc. 72-1, Ex. E.) The emails were not in their native format and did not include relevant metadata such as dates or times. (*See id.*)

During her deposition, Wallace testified that she had "cop[ied] [each] e-mail exactly like it is." (Doc. 72-1, Ex. F, Dep. of Sharon Wallace ("Wallace Dep.") at 45:9–11.)[5] When asked where she had "looked for relevant records in th[e] case," she responded, "[w]hy would I be looking?" (*Id.* at 41:17–21.) She explained that she did not search her emails but produced documents from a folder on her computer that she had "organized" in 2020. (*Id.* at 44:23–45:24, 54:11–18.) She testified that she had all relevant emails but only provided her counsel "what needed to be on point." (*Id.* at 40:4–7, 97:16–19.) This included her "EEOC case" but not all of her communications with the EEOC. (*Id.* at 52:15; *see id.* at 52:2–18, 54:8–18.)

On July 2, 2024, Fry's sent Wallace a second set of RFPs that included specific search terms for searching relevant ESI, along with a request to produce the copy-and-pasted emails in their native format. (Doc. 72-1, Ex. G, ("Second RFPs") at 67–68.) Wallace initially objected to the requests, but later produced screenshots of the inbox from one of her email accounts on September 30, 2024. (Doc. 72-1, Ex. H, ("Resps. to Second RFPs") at 73–75; *see* Doc. 72-1, Ex. J.) In early October 2024, Wallace produced some number of emails in their native format for the first time. (*See* Mot. at 6–7; *see, e.g.*, Doc. 72-1, Ex. S.)

---

Mot. at 11 n.14.)
[5] When citing the excerpt from Wallace's deposition transcript, the Court refers to the transcript's own page and line numbers.

Fry's continued to assert her discovery responses were deficient, and in early November 2024, Wallace shared a list of five email accounts for forensic examination.[6] (*See* Doc. 72-1, Ex. K; Doc. 72-1, Ex. M at 108.) However, she only provided passwords for two of the accounts because—according to Wallace's former counsel—she could not locate the other three passwords. (*Id.* at 107.) Peak Forensics was provided access to the two email accounts on December 5, 2024. (*See id.* at 108; Doc. 92, Resp. in Opp'n to Mot. ("Resp.") at 7.)

According to Fry's, the forensic examination discovered nearly 5,000 emails from these two email accounts that met the search parameters from the second set of RFPs. (Mot. at 7.) For example, Wallace e-mailed a former Fry's employee on May 23, 2023 about her lawsuit. (Doc. 72-1, Ex. N at 123–25.) Fry's claims that, based on a comparison of the inbox screenshots that Wallace provided on September 30, 2024 and the preliminary results of the forensic examination, "some of the emails in the screenshots are no longer accessible and appear to have been deleted at some point by Plaintiff after September 30, 2024." (Mot. at 7.)

In her Response to the Motion, Wallace attaches a screenshot of the inbox from one of her email accounts that she claims was previously inaccessible. (*See* Doc. 94-1 at 59.) The inbox appears to contain a total of forty-three "items," including seven draft emails. (*See id.*) Wallace also attaches a November 29, 2024 email to her former counsel in which she stated that she "noticed an email was deleted and not recoverable from the 'trash.'" (*Id.* at 48.)

### 3.    Social Media Content

In its First Set of Interrogatories, Fry's asked Wallace to identify any "social networking accounts" she had maintained or used since 2019, including "Facebook," "Twitter/X," "Telegram," and Gab," among others. (Answers to Interrogs. at 35–36.) Her answer to the interrogatory stated that she had a Facebook account but had "no other social media accounts." During her deposition, Wallace testified she had stopped using Facebook,

---

[6] Fry's claims that the forensic examination suggested she has a sixth, undisclosed email account. (Mot. at 7 n.8; *see* Doc. 72-1, Ex. N at 127.)

but admitted she had a Telegram account. (Wallace Dep. 59:12–15, 61:2–24.) When asked if she had any other social media accounts, she responded: "I probably did, but I don't -- I just don't do it. . . . I don't remember enough -- I just don't do social media." (*Id.* at 59:19–25.)

The forensic examination revealed that Wallace had at least four additional social media accounts: Twitter/X, Gab, Parler, and MeWe. (Doc. 72-1, Ex. O; Doc. 72-1, Ex. Q, at 136, 138.) Someone attempted to log in to Wallace's Gab and Parler accounts in November 2024, and Wallace sent a text message to her daughter about all four accounts on November 4, 2024. (Doc. 72-1, Ex. O; Doc. 72-1, Ex. Q, at 136, 138.) In addition, Wallace previously had a LinkedIn account, which was deleted on October 11, 2021. (Doc. 72-1, Ex. P.)

### 4.    Text Messages

Fry's also requested that Wallace produce any text messages related to her lawsuit. (First RFPs at 6.) Wallace objected to the request and, according to Fry's, did not produce any text messages. (*See* Resps. to First RFPs at 142; Mot. at 2–3.) During her deposition, Wallace testified that she had not texted her family about her alleged injuries or termination from Fry's.[7] (Wallace Dep. at 41:2–7.)

Fry's second set of RFPs again requested text messages that fell within the provided search parameters. (Second RFPs at 67.) Wallace objected to the request as duplicative and unduly burdensome and stated that she "ha[d] produced all emails and electronic documents related to this matter." (Resps. to Second RFPs at 74.)

According to Fry's, the forensic examination of Wallace's iPhone produced more than 33,000 text messages that satisfied the search terms provided in the second set of RFPs. (Mot. at 9.) Attached to the Motion is an excerpted spreadsheet outlining several text messages that Wallace sent to her family members concerning this lawsuit, including:

- A text sent to her sister on July 21, 2023: "I would like to send you the

---

[7] Fry's also claims that Wallace "testified that she did not search for text messages because 'I just don't text.'" (Mot. at 9.) However, Fry's did not attach the cited page of the deposition transcript to the Motion. (*See id.*; Wallace Dep.)

documents from my disability case. After you see how strong the case is I would like to discuss a business transaction with you." (Doc. 72-1, Ex. O.)

- Two texts sent to her son on January 24, 2024: "Phil is asking for a medical release… I'm not going to do that… This not about medical or injury… It's about my right to work and lost my job bc they didn't like the permanent and stationary dr report[.] PS they have all the medical doc's they need!" (*Id.*)

- A text sent to her son on March 5, 2024: "Can U tell me if it's okay to give my attorney your US ph number which goes to the opposing side? Relating to, how did I seek the EEOC, Who I talked to about injury/injury/incident gossip." (*Id.*)

- Two texts sent to her son on March 11, 2024: "Can u tell me the p/word for deleted docs[?] It's deleted items Microsoft." (*Id.*)

- A text sent to her daughter on September 16, 2024: "One more thing your needs to know with retaliation their attorneys have to pay for my attorney[.] Phil told them during the last settlement conference." (*Id.*)

Fry's also claims that the spreadsheet prepared by Peak Forensics shows that at least seventeen texts were "user deleted" or "unsent" between November 2023 and November 2024. (*See* Mot. at 9–10.)

## B.    Procedural Background

Wallace filed the Complaint in this Court on May 24, 2023. (Compl.) On September 15, 2023, the Court dismissed three of Wallace's claims as stipulated by the parties, leaving only a failure to accommodate claim under the ADA. (Doc. 19, 9/15/23 Order; *see* Doc. 18; Compl. ¶¶ 107–122.) The parties proceeded to discovery, with fact discovery closing on December 18, 2024. (*See* Doc. 26, 10/27/23 Order; Doc. 67, 10/22/24 Order.) Fry's filed the Motion on the same day, seeking dismissal of the Complaint under Federal Rule of Civil Procedure ("Rule") 37(e) and (c)(1). (Mot.) On January 23, 2025, the Court granted the request of Wallace's former counsel to withdraw from the case. (Doc. 88, 1/23/25 Order.) Proceeding pro se, Wallace filed her Response to the Motion on January 31, 2025,

1  to which Fry's replied on February 7, 2025. (Resp.; Reply.)

2  **II.     LEGAL STANDARD & ANALYSIS**

3      **A.     Rule 37(e)**

4         Under Rule 37(e), sanctions are available when (1) electronically stored information

5  ("ESI") that should have been preserved in anticipation of litigation is lost; (2) the loss is

6  due to a party's failure to take reasonable steps to preserve it; and (3) the information cannot

7  be recovered through additional discovery. Fed. R. Civ. P. 37(e). If these criteria are met,

8  and the court concludes that there is prejudice to another party from the lost ESI, Rule

9  37(e)(1) instructs the court to "order measures no greater than necessary to cure the

10  prejudice." Fed. R. Civ. P. 37(e)(1). But if the court determines that a party "acted with the

11  intent to deprive another party of the information's use in litigation," Rule 37(e)(2)

12  authorizes more severe sanctions if necessary, including an adverse inference instruction,

13  the presumption that the lost information was unfavorable to the party, or the dismissal of

14  the action. Fed. R. Civ. P. 37(e)(2)(A)–(C).

15         The applicable "standard of proof for spoliation sanctions is a preponderance of the

16  evidence," and "[t]he Court is the appropriate finder of fact on a Rule 37(e) motion." *Fast*

17  *v. GoDaddy.com LLC*, 340 F.R.D. 326, 335 (D. Ariz. 2022); *Burris v. JPMorgan Chase &*

18  *Co.*, 566 F. Supp. 3d 995, 1012 (D. Ariz. 2021) (citation omitted).

19         **1.     Duty to Preserve**

20         Rule 37(e) sanctions are permissible only where a plaintiff had a duty to preserve

21  the ESI at issue. *Fast*, 340 F.R.D. at 336. The duty to preserve in Rule 37(e) is derived

22  from common law, and "arises when a party knows or should know that certain evidence

23  is relevant to pending or future litigation." *Surowiec v. Cap. Title Agency, Inc.*, 790 F.

24  Supp. 2d 997, 1005 (D. Ariz. 2011) (citation omitted); *see Fast*, 340 F.R.D. at 336.

25  "Generally, a duty to preserve documents for future litigation arises '[a]s soon as a potential

26  claim is identified.'" *Jones v. Riot Hosp. Grp. LLC*, No. CV-17-04612, 2022 WL 3682031,

27  at *4 (D. Ariz. Aug. 25, 2022) (citation omitted), *aff'd*, 95 F.4th 730 (9th Cir. 2024). The

28  duty may arise after the filing of a related workers' compensation claim. *See Montoya v.*

*Orange Cnty. Sheriff's Dep't*, No. SACV 11-1922, 2013 WL 12347292, at *6 (C.D. Cal. Oct. 15, 2013) (finding that the duty to preserve arose after plaintiff filed a workers' compensation claim).

Here, Wallace filed a workers' compensation claim in January 2020, shortly after her alleged injury. (Compl. ¶ 36; Answer ¶ 36; *see* Compl. ¶¶ 29–35.) According to Wallace, after Fry's denied her claim, she prepared a complaint detailing "all events that occurred during her first workers' compensation claim in 1998 through the January 30, 2020, refusal of care." (Compl. ¶ 53.) By March 2020, Wallace was represented by counsel. (*See id.* ¶¶ 84–85.) On March 8, 2020, her counsel sent a letter to human resources, "citing Fry's failure to accommodate Ms. Wallace and failure to engage in a good faith interactive process." (*Id.* ¶ 85.)

Based on this timeline of events, and because her workers' compensation claim and her lawsuit concern the same incident, the Court finds that Wallace's duty to preserve arose when she filed her workers' compensation claim in January 2020. *See Surowiec*, 790 F. Supp. 2d at 1005; *Montoya*, 2013 WL 12347292, at *6.

### 2.    Spoliation of ESI

A party seeking sanctions under Rule 37(e) must establish three prerequisites: (1) "the ESI should have been preserved in the anticipation or conduct of litigation," (2) the ESI was "lost through a failure to take reasonable steps to preserve it," and (3) the ESI "cannot be restored or replaced through additional discovery." *Fast*, 340 F.R.D. at 335.

Fry's has demonstrated that, at a minimum, the following ESI was lost or destroyed due to a failure to preserve it: (1) two audio recordings—"4-15 PH. Works Comp.m4a" and "Civil Complaint June 5, 2020.m4a"—which were deleted from Wallace's Dropbox account; (2) three audio recordings—"Apr 7 22' no pay unemployment Danielle adjuc.m4a," "Attry Terence cushing.m4a," and "Aug 19 unmployment pd.m4a"—which were apparently stored on Wallace's tablet and are no longer accessible; and (3) Wallace's LinkedIn account, which was deactivated on October 11, 2021. (Doc. 72-1, Ex. U; Doc. 72-1, Ex. V; Doc. 94-1 at 48; Doc. 72-1, Ex. P.) Wallace's discovery responses also suggest

that at least two other audio recordings have been lost or deleted: the January 30, 2020 conversation between Wallace and the workers' compensation claims management provider and the February 3, 2020 conversation between Wallace and Fry's employees "about light duty work."[8] (*Compare* Resps. to First RFPs at 141–42, *with* Suppl. Resps. to First RFPs at 23–24.) Fry's has shown that none of this ESI can be restored or replaced through additional discovery, as she did not back-up her tablet and there is no indication that other copies of the recordings exist or that Wallace's LinkedIn account can be recovered. (*See* Mot.; Resp; Doc. 72-1, Ex. L at 105); *Youngevity Int'l v. Smith*, No. 3:16-CV-704, 2020 WL 7048687, at *2 (S.D. Cal. July 28, 2020) ("Defendants' failure to prevent destruction by backing up their phones' contents . . . was not reasonable because they had control over their text messages and should have taken affirmative steps to prevent their destruction when they became aware of their potential relevance.").

Wallace argues that Fry's "claims of spoliation are speculative" and contends that she "did not *deliberately* delete or destroy relevant evidence." (Resp. at 3 (emphasis added).) However, she does not dispute that the ESI identified above is no longer accessible or contend that the information could be recovered through additional discovery. (*See* Resp.) Nor does she assert the loss of ESI was due to reasons outside her control. *See* Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment (explaining that Rule 37(e) is inapplicable when ESI is "destroyed by events outside the party's control," such as a flooded computer room, failed cloud service, or malicious software attack). "Moreover, because 'the relevance of . . . [destroyed] documents cannot be clearly ascertained because the documents no longer exist,' a party 'can hardly assert any presumption of irrelevance as to the destroyed documents.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (alteration in original) (citation omitted).

Wallace also asserts that "[a]ny deficiencies in discovery responses were not due to [her] willful disobedience but rather the miscommunication, errors, and oversight of her

---

[8] It is unclear whether any of these recordings are the same as the recordings of Wallace's conversations with ICA representatives that, according to her former counsel, "were deleted when [Wallace] withdrew from the ICA proceeding." (Doc. 72-1, Ex. T at 152.)

former attorney." (Resp. at 8.) Wallace's argument misunderstands her discovery obligations and is not supported by the record. First, while "[c]ounsel bear responsibility for coordinating their clients' discovery production," litigants have an independent duty to participate in discovery in good faith, and "in civil litigation a party plainly cannot destroy material evidence." *Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, 678 (W.D. Wash. 2014); *Milke v. City of Phoenix*, 497 F. Supp. 3d 442, 463 (D. Ariz. 2020); *see* Fed. R. Civ. P. 37 advisory committee's note to 1980 amendment (explaining that Rule 37 authorizes sanctions against "parties *or* attorneys who fail to participate in good faith in the discovery process" (emphasis added)). The rule is no different for pro se parties, as they are subject to "the same rules of procedure that govern other litigants." *Milke*, 497 F. Supp. 3d at 467 n.17 (citation omitted); *see also Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1246 (9th Cir. 1981) ("The discovery process is subject to the overriding limitation of good faith. Callous disregard of discovery responsibilities cannot be condoned.").

Second, Wallace does not argue or provide evidence to show that her former counsel deleted the recordings or her deactivated LinkedIn account. (*See* Resp.) Rather, the record reflects that at least some of the recordings—along with her LinkedIn account—were lost or deleted before she retained her former legal counsel in May 2023. (*Compare id.* at 4 (stating that Wallace retained legal counsel on May 1, 2023), *with* Doc. 72-1, Ex. T at 152 (e-mail from former counsel stating that Wallace recalled deleted recordings of conversations with ICA representatives "when she withdrew from the ICA proceeding"), *and* Doc. 72-1, Ex. P (October 11, 2021 e-mail stating that LinkedIn account was deactivated).)

The Court finds by a preponderance of the evidence that the recordings and LinkedIn account were lost or destroyed after Wallace's duty to preserve arose in January 2020, that she did not take reasonable steps to preserve them, and that they cannot be replaced through additional discovery.

### 3.    Prejudice Under Rule 37(e)(1)

Rule 37(e)(1) sanctions are available without a finding of intent to deprive if Fry's

was prejudiced by the lost or destroyed ESI. "Prejudice exists when spoliation prohibits a party from presenting evidence that is relevant to its underlying case." *Fast*, 340 F.R.D. at 339 (citation omitted). "Determining the content of lost information may be a difficult task in some cases," and "[t]he rule does not place a burden of proving or disproving prejudice on one party or the other." Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment. Fry's argues that, in addition to the time spent obtaining Wallace's discovery responses, it was prejudiced by the spoliated ESI because Wallace "has effectively prevented discovery of the whole truth." (Mot. at 15.) The Court agrees.

While neither the Court nor Fry's will ever know what the recordings from Wallace's workers' compensation complaint contained, "it is at least reasonable to presume that [Wallace] would not have destroyed the evidence if it had been helpful to her claims." *Milke*, 497 F. Supp. 3d at 471. In addition, the temporal proximity between the recorded conversations and the incident underlying this lawsuit—along with the file names of the recordings themselves—strongly suggest the ESI was germane to Wallace's case. (Doc. 72-1, Ex. U; Doc. 72-1, Ex. V.) The deletion of these recordings, at a minimum, is sufficient to show prejudice.

Wallace argues that Fry's did not suffer prejudice because it "already possessed many of the requested documents and repeatedly sought information that was already in its possession." (Resp. at 8.) Her brief does not explain which requests for production were duplicative. (*See id.*) Nonetheless, considering the record before the Court, Wallace's assertion is unfounded. Because Fry's has been prejudiced by Wallace's spoliation of ESI, the Court finds that sanctions are appropriate under Rule 37(e)(1).

### 4.    Intent Under Rule 37(e)(2)

Sanctions under Rule 37(e)(2) are also permissible if a movant shows that a party "acted with the intent to deprive another party of the information's use in litigation." Fed. R. Civ. P. 37(e)(2). "[T]he intent required by Rule 37(e)(2) 'is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party.'" *Gregory v. State of Montana*, 118 F.4th 1069, 1080 (9th Cir. 2024)

(citation omitted). "[A] district court may consider circumstantial evidence in determining whether a party acted with the intent required for Rule 37(e)(2) sanctions," including "the timing of destruction, affirmative steps taken to delete evidence, and selective preservation." *Jones*, 95 F.4th at 735 (9th Cir. 2024). "Intent may be inferred if a party is on notice that documents were potentially relevant and fails to take measures to preserve relevant evidence, or otherwise seeks to 'keep incriminating facts out of evidence.'" *S. Ctys. Oil Co. v. Henry*, No. CV-18-02307, 2023 WL 2891378, at *20 (D. Ariz. Apr. 11, 2023) (citation omitted).

The Court concludes there is sufficient evidence to support a finding of intent. Wallace was on notice since January 2020 that any recordings of conversations about her workers' compensation claim or the underlying incident were potentially—if not likely—relevant to future litigation. The record shows that affirmative steps were taken to delete at least two of the recordings—"4-15 PH. Works Comp.m4a" and "Civil Complaint June 5, 2020.m4a"—along with her LinkedIn account. (*See* Doc. 72-1, Ex. U; Doc. 72-1, Ex. P.) The circumstances of her inoperable tablet—which had not been backed up and was "accidentally dropped" in water just thirteen days before the forensic examination—are also suspect. (Doc. 72-1, Ex. L at 104; *see* Doc. 94-1 at 33–34.) In addition, the separate folder of "organized" documents that Wallace maintained on her computer is evidence of selective preservation. (Wallace Dep. at 45:20–24; *see id.* at 44:23–45:19, 54:11–18.)

Wallace's misrepresentations, delays, and withholding of evidence during discovery further evince an intent to deprive Fry's of relevant information. For example, Wallace misled Fry's regarding her communications with family members about her lawsuit. (*Compare* Wallace Dep. at 41:2–7 (denying that she texted family members about her workplace injury or termination from Fry's), *with, e.g.*, Doc. 72-1, Ex. O (writing in a text to her son that her case is about how she "lost [her] job" because Fry's "didn't like the permanent and stationary dr report").) She misrepresented the number of social media accounts she used or maintained. (*Compare* Answers to Interrogs. at 36 (stating that she "has no other social media accounts" other than Facebook), *with, e.g.*, Doc. 72-1, Ex. O

(writing in a text to her daughter that "I had MeWe and Gab and twitter and parlor"). She failed to disclose several email accounts in her interrogatory responses. (*Compare* Answers to Interrogs. at 36 (listing no email accounts), *with* Doc. 72-1, Ex. M at 108 (stating that Wallace provided a list of five email accounts in November 2024).) For nearly a year, she appears to have withheld thousands of responsive emails and text messages. (*See* Doc. 92-1, Ex. N at 126–29 (detailing discovery timeline and preliminary results of forensic examination).) Indeed, during her deposition, she questioned why she needed to search for relevant records at all. (*See* Wallace Dep. at 41:17–21.)

In light of the circumstantial evidence surrounding Wallace's spoliation of ESI and her pattern of misconduct throughout discovery, the Court finds that she acted with the intent to deprive Fry's of relevant information and concludes that sanctions are warranted under Rule 37(e)(2).

## B.     Rule 37(c)(1)

Rule 37(c)(1) authorizes a court to sanction a party that fails to produce information required by Rule 26(a) or (e) "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Relevant here, Rule 26(e) requires litigants to supplement or correct its responses to interrogatories, requests for production, or requests for admission. Fed. R. Civ. P. 26(e). As a result, "sanctions are available under Rule 37(c)(1) – for violating Rule 26(e) – when a party provides incomplete, misleading, or false discovery responses and does not complete or correct them by supplement." *Fast*, 340 F.R.D. at 33. The Rule is a "self-executing, automatic sanction to provide a strong inducement for disclosure" and authorizes a range of sanctions, including attorney's fees "caused by the failure" and dismissal of the action. *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); Fed. R. Civ. P. 37(c)(1)(A)–(C); *see* Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi). The party facing sanctions has the burden to show that the failure to disclose was substantially justified or harmless. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008).

As discussed above, Wallace provided several false and incomplete discovery

responses and failed to appropriately correct them through supplementation. In her Response, Wallace asserts that she "provided substantial documentation to her attorney and attempted to comply with all discovery requests" and argues that any discovery deficiencies were substantially justified. (Resp. at 8.) The record belies her claim. Notably, Wallace gave false responses about her social media and email accounts and withheld substantial responsive text messages and emails, despite Fry's repeated efforts to facilitate their production. *See supra* Section II.A.4. Furthermore, to the extent Wallace attempts to place blame on others, the record reflects that she even withheld documents from her own counsel. (*See, e.g.*, Wallace Dep. at 97:18–19 ("[D]id I give Phil everything? No. I gave him what I needed to be -- what needed to be on point.")); Doc. 94-1 at 37 (November 20, 2024 email from Wallace's son summarizing a meeting in which Wallace, her former counsel, and other family members "went over each line item that wasn't shared" by Wallace).)

The Court concludes that Wallace's discovery misconduct justifies sanctions under Rule 37(c)(1).

## C.    **Dismissal Sanctions**

Having determined that sanctions are warranted under Rule 37(e)(1), (e)(2), and (c)(1), the Court now considers Fry's request to dismiss Wallace's lawsuit. (Mot. at 15–17.)

"[D]ismissal 'constitutes the ultimate sanction for spoliation.'" *Fast*, 340 F.R.D. at 353 (citation omitted). "Dismissal is appropriate where a pattern of deception and discovery abuse made it impossible for the district court to conduct a trial with any reasonable assurance that the truth would be available." *Burris*, 566 F. Supp. 3d at 1019 (quoting *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998)). "In evaluating the propriety of dismissal, [courts] consider all incidents of . . . alleged misconduct." *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995).

"To dismiss a case under Rule 37(e)(2), a district court need only find that the Rule

37(e) prerequisites are met, the spoliating party acted with the intent required under Rule 37(e)(2), and lesser sanctions are insufficient to address the loss of the ESI." *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024). Because Wallace has violated Rule 37(e)(2), the Court need only consider whether lesser sanctions are sufficient. *See id.* Aside from dismissal, Rule 37(e)(2) authorizes a court to "presume that the lost information was unfavorable to the party" or give an adverse inference jury instruction. Fed. R. Civ. P. 37(e)(2)(A)–(B). District courts have "considerable discretion" to exercise dismissal sanctions "where there has been flagrant, bad faith disregard of discovery duties." *Wanderer v. Johnston*, 910 F.2d 652, 655–56 (9th Cir. 1990) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

Fry's argues that, absent dismissal, it will be forced to incur significant time and expense investigating Wallace's data and litigating any additional spoliation, "with no guarantee that Fry's will ever be able to rely on the information Plaintiff produces." (Mot. at 16.) The Court agrees. Wallace's misconduct is not limited to spoliation but also includes dishonesty and obstruction. *See supra* Section II.A.4. Considering Wallace's "pattern of deception and discovery abuse," an adverse inference jury instruction as to the spoliated evidence would not provide the "confidence that [Fry's] will ever have access to the true facts." *Burris*, 566 F. Supp. 3d at 1019 (quoting *Valley Eng'rs*, 158 F.3d at 1057–58); *see, e.g.*, *See, e.g., Wanderer*, 910 F.2d at 655 (finding that the offending party's "repeated and inexcusable obstruction of every type of discovery attempted by the [moving party]" justified dismissal); *Bruner v. City of Phoenix*, CV-18-00664, 2020 WL 554387, at *5 (D. Ariz. Feb. 4, 2020) (summarizing the court's previous order to dismiss the case due to plaintiff's misconduct, which included the withholding of "relevant social media posts . . . the deletion of relevant evidence, attempts to evade discovery, and failure to comply with two Court Orders"); *OmniGen Rsch. v. Yongqiang Wang*, 321 F.R.D. 367, 372, 376 (D. Or. 2017) (ordering dismissal where defendants had "donated" a computer, intentionally deleted documents, emails, and metadata, and refused to produce relevant emails).

Because lesser alternatives would be inadequate, the Court concludes that dismissal

1  is the only appropriate sanction.[9]

2  **III.    CONCLUSION**

3      The Court grants Fry's Motion for Sanctions because Wallace has violated Rules

4  37(e)(1), (e)(2), and (c)(1). Because lesser sanctions would be inadequate, the Court

5  dismisses Wallace's case with prejudice under Rule 37(e)(2).

6      **IT IS ORDERED** granting Defendant's Motion for Sanctions Against Plaintiff

7  (Doc. 72).

8      **IT IS FURTHER ORDERED** dismissing Plaintiff's Complaint with prejudice

9  (Doc. 1).

10     Dated this 3rd day of June, 2025.

11

12

13

14  _____
                    Susan R. Bolton
15              United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[9] Fry's also requests monetary sanctions in the form of attorneys' fees and costs. (Mot. at 17.) However, because the request was made in passing and neither party substantively briefed it, the Court declines to reach the issue. (*See generally* Mot.; Resp.)